UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Beer Industry – Local Union No. 703 Health and Welfare and Beer Industry – Local Union No. 703 Pension Fund, *Plaintiffs*, v. Louis Glunz Beer, Inc., *Defendant*. | No. 22 CV 03841 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Before the court are Plaintiffs' [Dkt. 107] and Defendant's [Dkt. 108] motions *in limine* (MILs).[1]

PLAINTIFFS' MOTIONS

**Plaintiffs' MIL No. 1: Casual-to-Permanent Worker Ratio Calculation**

Plaintiffs move to exclude argument or evidence suggesting that the collective bargaining agreements (CBAs) allow for a casual-to-permanent worker ratio calculated on a daily, rather than a monthly basis. The motion is granted.

In its order denying summary judgment, the court, after reviewing the parties' briefing on the issue, ruled on whether the CBAs require calculating the casual-to-permanent worker ratio on a monthly or daily basis. [Dkt. 90 at 8.] In no uncertain terms, the court found that "[u]nder a holistic, non-piecemeal reading of the CBA, the ratio is measured monthly." [*Id.*; see also *id.* at 9 ("Even though the ratio must be calculated monthly…")] This ruling was not tentative or preliminary. See *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (explaining that a court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure"). That the court ultimately identified *factual* disputes preventing it from granting summary judgment does not alter its *legal* conclusions, which "continue to govern the same issues in subsequent stages of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983).

To prevent any further confusion on this point: the court decided as a matter of law that the CBAs require that the casual-to-permanent ratio be calculated on a

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

monthly, not daily, basis. Any evidence or argument suggesting otherwise is excluded as contrary to the law of the case and irrelevant.

**Plaintiffs' MIL No. 2: Reclassification from Casual to Permanent Based on Ratio**

Plaintiffs also move to exclude argument or evidence that the CBAs do not allow for the automatic conversion of casual employees to permanent employees for purposes of calculating Defendant's contribution obligations if the casual-to-permanent ratio is exceeded. This motion too is granted.

In its order denying summary judgment, the court considered and rejected Defendant's argument on this very issue, and held that, pursuant to the Seventh Circuit's decision in *Central States, Southeast, Southwest Areas Pension Fund v. Kroger Co.*, interpreting the CBAs holistically leads to the conclusion that, if an employee is not "permanent," then the employee is "casual"—"the only other type of new employee countenanced by the CBA." [Dkt. 90 at 9 n.6 (quoting *Cent. States, Se., Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 914 (7th Cir. 2000)).] The law of the case doctrine applies. So Defendant may not present evidence or argument that casual employees who exceed the ratio are anything but permanent employees under the CBA.

### DEFENDANT'S MOTIONS

**Defendant's MIL No. 1: James Sanew Testimony**

Defendant moves to exclude testimony from Plaintiffs' auditor, James Sanew. It asserts that Sanew is an expert witness that Plaintiffs did not disclose in their Rule 26(a)(2) disclosures.

But Sanew is not an expert witness. As the Seventh Circuit recognized in *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, an auditor who testifies "as to the preparation of [an audit] report, the assumptions reflected in the report, and the report's conclusions" as to what a company owes a Fund "based on application of those assumptions to the company's payroll records" is not expert opinion testimony. 570 F.3d 890, 901–02 (7th Cir. 2009).

Plaintiffs maintain that Sanew "will draw from his personal knowledge of his review of Glunz's business records and may cover his methodology and assumptions based on the applicable Agreements as well as the relevant factual conclusions." [Dkt. 111 at 2.] Just as the auditor in *Cork Plastering* who reviewed reports of field auditors and then testified about the data and assumptions underlying the report, Sanew is "qualified to lay an appropriate foundation for the report." 570 F.3d at 901–02. His testimony is therefore admissible. Defendant's MIL No. 1 is denied. The proper avenue for Defendant to challenge any assumptions underlying the report is through cross-examination and by presenting its own testimony and evidence.

2

**Defendant's MIL No. 2: Sanew's Chart**

Defendant next seeks to exclude Sanew's Chart, which Sanew created after he issued his October 15, 2020 audit report and which purports to show monthly casual-to-permanent ratio violations. The company argues that the chart is inadmissible because it was not based on a "contemporaneous review of the governing documents." [Dkt. 108 at 7.] The motion is denied.

Sanew created his chart based on the same business records he used to create his audit report. It thus qualifies as a summary of voluminous business records under Federal Rule of Evidence 1006. See *Cork Plastering Co.*, 570 F.3d at 901 (explaining that auditor's report, which summarized a company's payroll records to "show what the company might owe given certain assumptions" was admissible under Rule 1006). Like the company in *Cork Plastering*, Defendant's real issue is with the assumptions underlying Sanew's chart; namely, whether Sanew's basis for designating an employee as "permanent" lines up with the definition of "permanent employee" in the CBA. The way to challenge those assumptions is through cross-examination.

**Defendant's MIL No. 3: Testimony on Employee Classification**

Defendant's MIL No. 3 urges the court to exclude "speculative testimony on employee classification based on work patterns, route assignments, or industry custom." [Dkt. 108 at 10.] The CBAs define "permanent employee" as an employee who has a "permanent job assignment and who are a part of the total complement of classified personnel within a distribution center of a present Employer." [Dkt. 82, ¶ 9; Dkt. 76-3 at 13, 54.] The CBAs also discuss casual employees as those "who may be employed on a day-to-day basis" and "assigned as Helpers on package routes or to any hourly rated job." [Dkt. 82, ¶ 12; Dkt. 76-3 at 15, 56.] Introducing evidence about each employee's work patterns, route assignments, or industry customs does not change these definitions. That evidence does, however, assist a factfinder in interpreting the definitions.

Indeed, as Defendant recognized in its opposition to Plaintiffs' motion for summary judgment, industry norms are relevant to interpreting terms in a CBA. [Dkt. 81 at 14 ("When interpreting a CBA 'it is necessary to consider the scope of other related collective bargaining agreements, as well as the practices, usage and customs pertaining to such agreement.'") (quoting *Transportation-Commc'n Emp. Union v. Union Pac. R. Co.*, 385 U.S. 157, 161 (1966)).] And the CBAs discuss routes and hourly pay when describing casual employees. Whether an employee in fact has a "permanent job assignment," moreover, may be revealed through an examination of the employee's work patterns. In short, testimony on employee classification based on work patterns, route assignments, or industry custom is relevant to interpreting the CBAs so it is admissible. Defendant's MIL No. 3 is denied.

3

**Defendant's MIL No. 4: Legal Conclusions**

MIL No. 4 asks the court to bar witnesses from offering legal conclusions. The Funds represent to the court that they do not plan on introducing such evidence. [Dkt. 111 at 11.] In any event, Federal Rule of Evidence 701 requires lay witnesses to base their testimony on personal perception and avoid legal analysis. See *United States v. Noel*, 581 F.3d 490, 496 (7th Cir. 2009). The court finds it unnecessary to enter an order excluding testimony that the Federal Rules already prohibit.

**Defendant's MIL No. 5: Health and Welfare Contribution Coverage Election**

Defendant next seeks to exclude evidence and argument that it owes Health and Welfare contributions for employees who did not elect coverage. In doing so, Defendant yet again ignores the court's summary judgment order. The court could not have been more clear:

> As a preliminary matter, Glunz argues that it does not owe contributions to the Health Fund because the employees at issue did not elect health coverage. [Dkt. 72 at 5–7.] The relevant employees, Glunz argues, received a healthcare election card from the Fund upon hiring, inviting them to elect coverage. Because they did not so elect, Glunz says it owes no contributions. The Court does not agree.

[Dkt. 90 at 3–4.]

As the summary judgment order emphasized, Defendant cannot avoid its obligation to contribute to the Health and Welfare Fund by misclassifying a permanent employee as casual and thereby eliminating the employee's opportunity to elect coverage in the first place. Such misclassification would constitute a breach of contract. And if the breach did not occur, then the employee would have had the opportunity to elect Health and Welfare coverage.

In other words, a factfinder may decide an award of damages that includes Health & Welfare contributions for misclassified employees (employees who Defendant classified as casual but the factfinder deems were actually permanent) is necessary to put the Funds in the position they would be had no breach occurred. See *Chicago Painters & Decorators Pension, Health & Welfare & Deferred Sav. Plan Tr. Funds v. Karr Bros.*, 755 F.2d 1285, 1290 (7th Cir. 1985) (explaining that an award of damages in the amount a Defendant "would have been required to contribute to the trust funds if it had complied with the collective bargaining agreements" is appropriate for breach of a CBA).[2]

---

[2] Nothing in this order relieves Plaintiffs of their burden to demonstrate that their damages are certain and not contingent. See *Contempo Design, Inc. v. Chicago & N.E. Ill.*

4

Because evidence about the potential election of Health and Welfare contributions by misclassified employees is relevant to damages, Defendant's MIL No. 5 is denied.

**Defendant's MIL No. 6: Undisclosed Damages Materials**

Defendant asks the court to exclude evidence of damages that was not produced in discovery. Plaintiffs represent to the court that they do not intend to introduce evidence, testimony, or argument about damages that does not derive from the audit report and records produced in discovery. [Dkt. 111 at 12–13.] And Federal Rule of Civil Procedure 37(c)(1) already prohibits litigants from introducing information or witnesses not disclosed in Rule 26(a) or (e) as evidence at trial, unless the failure to disclose was "substantially justified or is harmless." Again, the court sees no need to enter an order barring evidence that the Federal Rules already prohibit.

**Defendant's MIL No. 7: Claims or Theories Not Pleaded in Complaint**

Defendant next avers that evidence or argument regarding any claim or theory not pleaded in Plaintiffs' first amended complaint—specifically, that the Defendant violated the CBAs' casual-to-permanent worker ratio and owes contributions for misclassified workers who had no opportunity to elect Health and Welfare coverage—must be excluded.[3]

Plaintiffs' first amended complaint states two claims, one for delinquent contributions and one seeking documents for audit. The claim for delinquent contributions explains that Defendant failed to pay contributions to the Funds pursuant to the terms of the CBAs. [Dkt. 31 at 3.] In their opening summary judgment brief, Plaintiffs elaborated on how the Defendant breached its obligations, including that the company violated the casual-to-permanent ratios set out in the CBAs and owed contributions to the Health and Welfare Fund for employees it misclassified as casual. [Dkt. 75 at 8–9, 11–15.]

---

*Dist. Council of Carpenters*, 226 F.3d 535, 554 (7th Cir. 2000) ("The general rule is, that all damages resulting necessarily and immediately and directly from the breach are recoverable, and not those that are contingent and uncertain.") (internal citations omitted).

[3] Defendant's MIL states that the "court's summary judgment order recognized that the Funds' new theories were not adequately developed in the pleadings and that the trial should be limited to the claims and theories actual pled." [Dkt. 108 at 23.] In doing so, Defendant again mischaracterizes the court's summary judgment order. Assuming Defendant is referring to page 9 of the order, the court expressed only that it would not rule "as a matter of law" that Defendant exceeded the casual-to-temporary worker ratio by including permanent employees "who were on vacation, using workers' compensation, or who were out sick," because neither party has adequately briefed the issue. [Dkt. 90 at 9.]

5

Contrary to Defendant's assertion otherwise, a plaintiff need not plead theories of liability. Rather, "[c]omplaints plead *claims*." *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.*, 826 F.3d 976, 981 (7th Cir. 2016). "Making legal arguments in support of one's claim comes after the pleadings." *Id.* Plaintiffs' complaint stated a claim for Defendant's breach of the CBAs. It did not need to go further and offer "[t]he reasons why they believe" a breach occurred. *Id.*

The factual basis for Plaintiffs' claims—that Defendant entered into CBAs and breached those CBAs by not contributing the correct amount of payment to the Funds—has not changed. See *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 809 (7th Cir. 2014) (holding that district court erred by declining to consider a plaintiff's new legal theory at summary judgment when the new theory did not alter a complaint's factual basis). Defendant, moreover, has not explained how it would be prejudiced by Plaintiffs' presentation of these theories at trial. See *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (explaining that whether to permit new arguments, or even new claims, at summary judgment or trial is within the court's discretion); *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) ("[A] district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend.").

And, to be sure, both parties had ample opportunity to conduct discovery and provide argument on whether Defendant violated the casual-to-permanent worker ratio, whether a casual employee converts to a permanent employee if that ratio is violated, and whether a misclassified employee's lost opportunity to elect Health and Welfare coverage prevents the Funds from recovering for contributions those employees might have opted into if allowed the opportunity. Indeed, the court provided analysis and ruled on each of these issues in its summary judgment order.

The court denies Defendant's MIL No. 7.

**Defendant's MIL No. 9[4]: Excluding Witnesses from Courtroom**

The parties stipulated to Defendant's final MIL, which asks the court to exclude under Federal Rule of Evidence 615 all witnesses, except each party's designated representative from the courtroom during trial until they have concluded their testimony. The court grants the motion, which applies reciprocally.

---

[4] Defendant withdrew its MIL No. 8. [Dkt. 108 at 24.]

6

\* \* \*

In sum, the court grants Plaintiffs' MILs Nos. 1 and 2. It denies Defendant's MILs Nos. 1, 2, 3, 4, 5, 6, and 7. And it grants Defendant's MIL No. 9.

Enter: 22-cv-3841
Date:   October 27, 2025

_____
Lindsay C. Jenkins
United States District Court Judge

7